UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN A. BAILEY,

                         Plaintiff,

v.                                                         Case No. 24-cv-517-pp

MICHAEL WEILAND, *et al.*,

                         Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Steven A. Bailey, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This order resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

      On September 16, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $30.09. Dkt. No. 24. The court received the full $350 filing

fee on October 21, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will document that he has paid the full $350 filing fee.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

2

Case 2:24-cv-00517-PP   Filed 12/02/24   Page 2 of 13   Document 29

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint names as defendants Michael Weiland, Keith Miller, Allan Tenhaken,[1] Thomas Ozelle and Patrick Fianagan. Dkt. No. 1 at 1. The plaintiff alleges that some or all defendants worked at the District 3 Milwaukee Police Station. Id. at 1–2.

The plaintiff's allegations are difficult to read and to follow. He alleges that defendant Weiland pushed him over a rail, and he landed on his face. Id. at 2. He says Weiland removed his body-worn camera and put it face down, then ran at the plaintiff and stomped on his fingers and jumped on the back of his neck. Id. The plaintiff does not say where, when or why this occurred. The plaintiff then alleges that defendant Miller "violated [his] Miranda rights," denied him an attorney and forged a judge's signature on a search warrant. Id. He says "it happened" on March 19, 2023, at 2557 N. 37th Street "and at the hospital." Id. The plaintiff alleges that defendants Tenhaken and Ozelle, "squad 3259," told him "at Sinai Hospital" that if he didn't make a statement, "what

---

[1] The plaintiff spells this defendant's name "Tenhakn" in the caption of the complaint but "Tenhaken" in the body of the complaint and supplemental letters. The court will use the latter spelling, which appears to be correct.

do[es he] think can happened [*sic*] to [him] if [he] didn't make a statement." Id. He alleges that Andrew Holzem (who is not named in the caption of the complaint) "violated [his] Miranda rights" at the Jail (presumably Milwaukee County Jail) after he told Holzem that he wanted an attorney "in the hallway before [the plaintiff] passout [*sic*]." Id. The plaintiff says he "told [Holzem] [two] times [and he] do[es] not know how he got [the plaintiff] in that room." Id. at 2–3.

The plaintiff claims that the defendants violated his Fifth Amendment rights because of "involuntary confessions." Id. at 3. In listing "[a]ll who in on this," he lists Fianagan (who he says is an attorney), "the State," the Milwaukee County Jail and the District 3 police station and its officers. Id. He also lists several other persons, including the defendants and persons not named in the caption (Luis Madrigal, Benjamin Wright, Nicholas Vlatowski, Daniel Gonzales) and says he "do[esn't] see how they getting a way [*sic*] with this." Id. The plaintiff seeks "100,M" in damages and says he wants "justice and the officers in jail." Id. at 4.

The same day the court received the complaint, it received a separate letter from the plaintiff in which he realleges his allegations that Miller, Tenhaken and Ozelle approached him at Sinai Hospital and asked him what he thought would happen to him if he "didn't make a statement." Dkt. No. 2. He again claims that Miller violated his "Miranda rights," denied him an attorney and forged a judge's signature on a search warrant. Id. He then alleges that "they didn't let [him] get x-rays to [his] head at the hospital . . . just [his] fingers." Id. He reiterates that Andrew Holzem "violated [his] Miranda rights to[o] at the Jail" when he told Holzem in a hallway that he wanted an attorney before he passed out. Id. But he says he then saw Holzem "walk off" while the plaintiff was

4

Case 2:24-cv-00517-PP    Filed 12/02/24    Page 4 of 13    Document 29

in a wheelchair in this hallway. Id. He says Holzem said at the plaintiff's trial that he interrogated the plaintiff in the hallway. Id. The plaintiff then says there is video of this incident and interrogation, but that he was not aware during the interrogation that it was being recorded. Id. At the end of this letter, the plaintiff says he "need[s] a[n] Attorney please." Id.

The same day, the court received a *second* letter from the plaintiff that adds further allegations about his claims. Dkt. No. 3. In this letter, the plaintiff says that on March 19, 2023, Weiland (who is an officer) was running behind him when the plaintiff stopped at 2557 N. 37th Street at a stairway "to show [his] hand's [*sic*]." Id. He alleges that Weiland "push[ed] [him] over a rail [and he] landed on [his] face." Id. The plaintiff looked back up and saw Weiland remove his body-worn camera, place it facedown on the ground and run toward the plaintiff. Id. He then stomped on the plaintiff's fingers and jumped on the back of his neck, which caused the plaintiff to hit his head on the ground. Id. The plaintiff says that when he got up, he asked Weiland, "was yo [*sic*] probable cause," but Weiland did not respond. Id. The plaintiff alleges that he suffered memory loss and a concussion and reiterates that "they didn't let [him] get x-rays to [his] head at Sinai Hospital just [his] fingers." Id. He again requests an attorney. Id.

    C.    Analysis

It is difficult for the court to determine from the complaint who the defendants are, where or when these events occurred and what specifically happened. The court can piece together from the complaint and the plaintiff's supplemental letters that on March 19, 2023, Officer Weiland was chasing the plaintiff for an unspecified reason. Weiland allegedly pushed the plaintiff over a railing, took off his body camera, chased after the plaintiff and then stomped on

the plaintiff's fingers and neck causing injuries. The plaintiff then was taken to Sinai Hospital, although it is not clear who took him there or how or when he arrived there. At the hospital, Tenhaken and Ozelle, (who also appear to be officers, because the complaint mentions a "squad" and a number) threatened the plaintiff to make a statement or something might happen to him. He alleges that Miller refused to provide the plaintiff an attorney and violated the plaintiff's Miranda rights, presumably by failing to give the plaintiff the warnings required by that decision. He also alleges that Miller forged a judge's signature on a search warrant. The plaintiff says that Andrew Holzem, who is not named as a defendant and may or may not also be an officer, also violated Miranda when he interrogated the plaintiff in a hallway at the jail (presumably after the plaintiff left the hospital) while the plaintiff was on the verge of passing out and recorded this interrogation without the plaintiff's knowledge. The plaintiff does not say what, if anything, he said to Holzem during the interrogation. Finally, the plaintiff names several other people, including Fianagan, but does not explain who they are or how they were involved in these events.

  The complaint may allege enough to state a claim that Officer Weiland used excessive force on the plaintiff during his arrest. This claim would arise under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 394 (1989); Tennessee v. Garner, 471 U.S. 1, 7–8 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard). Under the Fourth Amendment, the court applies an objective reasonableness test, considering the reasonableness of the force based on the events confronting the defendant at the time and not on his subjective beliefs or motivations. See Horton v. Pobjecky, 883 F.3d 941, 949–50 (7th Cir. 2018) (citing Graham, 490 U.S. at 396–97; County of Los Angeles v. Mendez, 581 U.S. 420, 426–27 (2017)). This test

6

Case 2:24-cv-00517-PP   Filed 12/02/24   Page 6 of 13   Document 29

carefully balances "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Id. at 949 (quoting Graham, 490 U.S. at 396).

The plaintiff alleges that Officer Weiland was chasing him, but he does not say why. He alleges that, despite the plaintiff putting up his hands, Weiland pushed him over a railing, removed his body camera and then assaulted the plaintiff, causing injuries to his head and fingers. He does not provide any details about the events before this chase, whether the plaintiff posed a threat to Weiland or the community or whether he resisted arrest before evading Weiland and forcing him to give chase. But the allegations that the plaintiff *does* provide, accepted as true for purposes of screening, provide enough information for the court to determine that pushing the plaintiff over a railing when he effectively had surrendered and then stomping on his neck and fingers may have been objectively unreasonable. The court will allow the plaintiff to proceed on this Fourth Amendment excessive force claim against Officer Weiland.

The plaintiff next alleges that several other officers denied him an attorney and told him he had to confess "or else" while he was at a hospital. The plaintiff asserts that the officers violated his rights under Miranda v. Arizona, 384 U.S. 436 (1966). But the Supreme Court recently held that failing to provide full Miranda warnings "is not itself a violation of the Fifth Amendment" and does not provide a basis for a claim for damages under §1983. Vega v. Tekoh, 597 U.S. 134, 150–52 (2022). The remedy for such a violation is instead "the 'exclusion of unwarned statements'" from trial. Id. at 152 (quoting Chavez v. Martinez, 538 U.S. 760, 790 (2003) (Kennedy, J., concurring in part and dissenting in part)). The plaintiff says that suspects "are

7
Case 2:24-cv-00517-PP   Filed 12/02/24   Page 7 of 13   Document 29

often tricked into confessing by a promise of lenient [treatment]" or coerced into confessing with "threats of violence or a bruta[l] beating." Dkt. No. 1 at 3. But he does not say whether those things happened to him. He says some of the defendants made veiled threats about what might happen to him if he didn't make a statement, but he does not allege they coerced him or threatened to assault him. He does not say whether he made any coerced or involuntary statements absent full Miranda warnings, nor does he say whether any statements that he did make were used against him at trial. Although he may have a viable Fifth or Fourteenth Amendment claim if those things occurred, the complaint does not allege that they did occur. The vague allegations in the complaint do not state a Fifth or Fourteenth Amendment violation.

The plaintiff alleges that "they" did not allow him to have an x-ray of his head at the hospital and only allowed him to have an x-ray on his fingers. He does not say who the "they" are who did not allow him to get an x-ray of his head. The plaintiff's allegations could suggest a claim under the Fourteenth Amendment for denial of proper medical treatment. See Miranda v. County of Lake, 900 F.3d 335, 352 (7th Cir. 2018) (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)). To proceed on this claim, the plaintiff must show that 1) "the 'defendants acted purposefully, knowingly, or perhaps even recklessly'" and 2) "the defendants' actions were [not] 'objectively reasonable.'" Pittman by & through Hamilton v. County of Madison, Ill., 970 F.3d 823, 827 (7th Cir. 2020) (quoting Miranda, 900 F.3d at 353–54). The plaintiff's single allegation that unspecified persons did not allow him to have his head x-rayed is not sufficient to state a claim against any named or unnamed defendant. He does not explain what these unspecified persons did to prevent him from having the x-ray, nor does he provide any information for the court to determine whether denying the

plaintiff an x-ray of his head was objectively unreasonable. The court will not permit the plaintiff to proceed on this undeveloped claim.

The plaintiff similarly alleges that Miller forged a judge's signature on a search warrant. But he does not say anything else about this search warrant. Did law enforcement execute the search warrant? What, or where, did they search? Did they find or seize anything? Did prosecutors use any seized evidence against the plaintiff at his trial? The complaint does not answer any of these questions. Without additional detail about this alleged forged signature, the court cannot determine whether Miller may have violated the plaintiff's rights. The plaintiff may not proceed on this claim.

The complaint does not adequately state a claim against Fianagan or any of the other persons listed at the bottom of page 3 of the complaint. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)). The complaint says that Fianagan is an attorney but nothing else. It names several persons not listed in the caption of the complaint but does not allege who they are or how they personally "caused or participated in a constitutional violation." Listing those persons and saying they were "in on this" is not enough to hold them liable under §1983.

The complaint says Fianagan is an attorney but does not say who he represented. If he is or was the plaintiff's defense attorney, the plaintiff cannot sue him under §1983 because defense attorneys (whether public defenders or private counsel) are not considered "state actors" who may be sued under that statute. See Walton v. Neslund, 248 F. App'x 733, 733 (7th Cir. 2007) (citing

9

Polk County v. Dodson, 454 U.S. 312, 318 (1981); and Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998)). If Fianagan is or was the prosecutor in the plaintiff's criminal case, then he is immune from claims for damages under §1983 for any actions he took in initiating or pursuing the prosecution, including any charging decision he made. See Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); Tobey v. Chibucos, 890 F.3d 634, 650 (7th Cir. 2018). Because the plaintiff says only that Fianagan was an attorney and does not specify what actions he took that violated the plaintiff's rights, the court will not allow the plaintiff to proceed on a claim against Fianagan.

Finally, the plaintiff asks that the officers involved be jailed for their actions. But the plaintiff "has no right to compel a criminal prosecution." Wimberly v. Julius, 606 F. App'x 309, 311 (7th Cir. 2015) (citing Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 768 (2005) and Sandage v. Bd. of Comm'rs of Vanderburgh Cnty., 548 F.3d 595, 597 (7th Cir. 2008)). The decision whether to bring charges is for a prosecutor to make, and the court has no authority to order or affect those decisions. See Benedict v. Eau Claire Area Sch. Dist., Case No. 08-CV-667-SLC, 2009 WL 440911, at *1 (W.D. Wis. Feb. 23, 2009) (citing United States v. Batchelder, 442 U.S. 114, 124 (1979)).

In summary: the court will allow the plaintiff to proceed on a claim of excessive force under the Fourth Amendment against Officer Weiland for damages only. The court will not allow him to proceed on any other claim against any other defendant because he cannot proceed on a claim that the officers violated Miranda, and his allegations do not state a claim for a violation of any other rights. The court also will dismiss all defendants who the plaintiff does not allege were personally involved in any constitutional violation.

Finally, in his supplemental letters the plaintiff asks the court to appoint him an attorney. In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). The plaintiff's request does not satisfy either of these inquiries. He does not say whether he has made any effort to obtain an attorney on his own, and he provides no information explaining why he is unable to litigate his case without a lawyer. Unless the plaintiff can satisfy both of those elements, the court will not attempt to recruit him an attorney.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **DISMISSES** defendants Keith Miller, Allan Tenhaken (or Tenhakn), Thomas Ozelle and Patrick Fianagan.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Officer Michael Weiland of the Milwaukee Police Department under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service

packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Weiland to file a responsive pleading to the complaint.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 2nd day of December, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**