UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN A. BAILEY,

                Plaintiff,

v.                                        Case No. 24-cv-517-pp

MICHAEL WEILAND,

                Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 31) AND SCREENING AMENDED COMPLAINT (DKT. NO. 37) UNDER 28 U.S.C. §1915A**

On December 2, 2024, the court screened plaintiff Steven A. Bailey's *pro se* complaint filed under 42 U.S.C. §1983, allowed him to proceed on a Fourth Amendment claim against Officer Michael Weiland and dismissed all other claims and defendants. Dkt. No. 29. The court transmitted the complaint and the screening order to the U.S. Marshals Service for service on defendant Weiland, and counsel for Weiland has appeared and answered the complaint. Dkt. Nos. 30, 32, 36.

Before the court are the plaintiff's motion for reconsideration (Dkt. No. 31) and his proposed amended complaint (Dkt. No. 36). This order denies the motion for reconsideration, screens the amended complaint, reinstates several dismissed defendants and allows the plaintiff to proceed on additional claims.

**I.     Motion for Reconsideration (Dkt. No. 31)**

On December 9, 2024, the court received the plaintiff's "motion to reconsider and subpoena the body camera of all the officers." Dkt. No. 31. The plaintiff realleges that some of the original officer–defendants did not provide him medical treatment and says he now has "problems with [his] eyes" that cause him to "see flashes of light." Id. He says the officers "probably muted the conversation" on the body camera video of him at the hospital. Id. He says that "they made [him] sign a medical paper," that "they took [him] out of the hospital without letting [him] get medical treatment" and that he "jumped in [his] sleep." Id. The plaintiff says that he will "take a lie detector test" about these events and does not "want this to happen to someone else." Id. He says that he "will write [the court] about fianagan [*sic*]." Id.

The plaintiff did not cite a rule or statute authorizing his motion for reconsideration. The court will construe the motion as if the plaintiff had brought it under Federal Rule of Civil Procedure 54, which provides, in part, that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Motions for reconsideration serve a limited function. They allow the court to correct manifest errors of law or fact or the plaintiff to present newly discovered evidence that was not available before the court ruled. Caisse Nationale de Credit v. CBI Industries, 90 F.3d 1264, 1269 (7th

Cir. 1996). They are not a vehicle for losing parties to reargue issues decided against them. Id. at 1270. A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

The plaintiff has not argued that the court made a manifest error of law or fact when it screened his complaint. He does not suggest that the court misapplied or failed to recognize a controlling precedent in the screening order. Nor does he allege that he has newly discovered evidence to present to the court that was not available to him before the court screened his complaint. Instead, he repeats some of the allegations from his complaint about the officers not providing him medical attention and adds that he now has vision issues. This information is not newly discovered; some of it is not new at all. And none of it provides a reason for the court to reconsider the screening order. Even if it did, the plaintiff does not say what he wants to court to reconsider—does he want his complaint rescreened? Does he want to proceed against the officers that the court dismissed? Does he want to add new claims? The court will not guess what relief the plaintiff wants. Because the plaintiff's motion provides no reason for the court to reconsider its screening order, the court will deny this motion. The court suspects that the plaintiff was attempting to amend his complaint to proceed against the dismissed officers. He since has filed an amended complaint, which the court will address below.

The plaintiff also asks the court to subpoena body camera footage of the incident, which he says will prove his allegations. A party may seek to compel another party to provide electronically stored information (like body camera footage) by serving that person with a subpoena. Fed. R. Civ. P. 45(a)(1)(D). The requesting party must ask the Clerk of Court to provide him with a subpoena form; the clerk will sign a blank subpoena form and deliver it to the requesting party. Fed. R. Civ. Pro. 45(a)(3). The requesting party must complete the form, and must make arrangements and pay someone to serve the subpoena on the person from whom he seeks to obtain the videos. Fed. R. Civ. P. 45(a)(3), (b).

Rule 45(a)(2) specifies the court from which a subpoena should issue, "but it does not compel the court to issue the subpoena." Johnston v. Devries, Case No. 21-2679, 2022 WL 476088, at *2 (7th Cir. 2022). Instead, the party seeking the subpoena (here, the plaintiff) "is responsible for paying the associated costs—even if the court has found that that the party is indigent." Larry v. Morgan, Case No. 16-cv-1108, 2017 WL 2773671, at *2 (E.D. Wis. June 26, 2017) (citing Armstead v. MacMillian, 58 F. App'x 210, 213 (7th Cir. 2003); and Nail v. Gutierrez, Case No. 06-cv-292, 2007 WL 425535 at *1 (N.D. Ind. Nov. 30, 2007)). This cost is why incarcerated persons usually do not rely on subpoenas to obtain information they believe they need to litigate their claims and instead use other discovery methods.

The court will deny the plaintiff's request for the court to subpoena body camera footage. If the plaintiff wants to serve a subpoena on the City of Milwaukee for production of body camera footage, he must obtain a blank

subpoena form from the Clerk of Court, fill it out, arrange for someone to serve it and pay to have it served. The court advises the plaintiff to carefully read and follow the procedures in Federal Rule of Civil Procedure 45 before he attempts to serve a subpoena for information in this case.

There is nothing prohibiting the plaintiff from simply asking the city to preserve the video footage—perhaps in a letter. And once the discovery process gets underway, the plaintiff may ask for evidence by serving the defendants with request for production, interrogatories and requests for admission.

**II.     Amended Complaint (Dkt. No. 37)**

On January 23, 2025, the court received the plaintiff's proposed amended complaint. Dkt. No. 37. Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course" within twenty-one days of service or within twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). The plaintiff filed his proposed amended complaint within this timeframe—only one day after Officer Weiland filed his answer—so the court will screen the proposed amended complaint.

  A. <u>Federal Screening Standard</u>

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

6
Case 2:24-cv-00517-PP    Filed 03/12/25    Page 6 of 14    Document 41

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The proposed amended complaint does not contain a caption and does not list the defendants. But it is much easier to follow than the plaintiff's original complaint and supplemental filings.

The plaintiff alleges that on March 19, 2023, he was walking home from 35th Street and Clark Street in Milwaukee. Dkt. No. 37 at ¶1. He says he noticed a police car coming toward him with "an officer hanging out the passenger side window" and stepped aside "to let the car pass." Id. at ¶¶2–3. The plaintiff says he did not have any warrants or open cases and was not on probation, so he "did not think [he] was the target of the police car." Id. at ¶4. The plaintiff went through an alley and a lot to get home, when he "noticed an officer (Michael Weiland) running towards [him]." Id. at ¶7. He says he "got scared and feared for [his] life so [he] decided to run up a little." Id. at ¶8. He says that Officer Weiland screamed at him to put down his gun, threatened to shoot and called him a racial slur. Id. The plaintiff says he "never had a gun." Id. at ¶9.

The plaintiff alleges that he stopped at a stair well "and showed [his] hands." Id. at ¶10. He says that Weiland again called him a racial slur and pushed him "over the stairway," and the plaintiff "landed on [his] face." Id. at ¶¶11–12. He says that Weiland "came falling down and rolling into the street." Id. at ¶13. The plaintiff says that he saw Weiland remove his body worn camera and "put it face down on the ground and run towards [him]." Id. at ¶14. He

7

says that Weiland stomped on his hands and fingers, "jumped on the back of [his] neck with his knee and start[ed] hitting [his] head to the ground." Id. at ¶¶15–16. The plaintiff "started screaming and asking for someone to help [him]," while Weiland continued to knee him in the spine. Id. at ¶17.

The plaintiff alleges that a car pulled up, and Officer Nicholas Ulatowski was driving. Id. at ¶18. The plaintiff yelled that he could not breathe and "felt someone grab [his] legs," but Ulatowski did not help him or stop Weiland's alleged assault. Id. at ¶¶19–20. The plaintiff says that Officers Luis Madrigal, Benjamin Wright and Daniel Gonzales then arrived and "pinned [him] to the ground as officer Weiland continued beating [him]." Id. at ¶21. He says that when Weiland stopped assaulting him, he "could barely walk or stand." Id. at ¶22. He asked Weiland "what [he] did wrong," but Weiland did not answer. Id. at ¶23. He says that a sergeant arrived, and he asked the sergeant "what was the Officer's probable cause and the sergeant didn't say anything." Id. at ¶24.

The plaintiff says that Officers Allan Tenhaken and Thomas Ozelie asked his name, but that the plaintiff could not remember it. Id. at ¶25. He does not say when or how Tenhaken and Ozelie arrived at the scene. Id. He says that his sister arrived, but that Tenhaken told him "to get in the car." Id. at ¶¶26–27. The plaintiff passed out in the car and woke up to Tenhaken in the back seat with him "telling [him] to stay awake." Id. at ¶¶28–29. Tenhaken moved to the front seat but continued to tell the plaintiff to stay awake. Id. at ¶30. The plaintiff asked Tenhaken where the officers were taking him, but Tenhaken did not answer and instead told the plaintiff not to go to sleep. Id. at ¶31.

8

The plaintiff alleges that Tenhaken and Ozelie took him to Sinai Hospital. Id. at ¶32. The plaintiff told the officers that he "needed to see a doctor and that [his] head was pounding." Id. at ¶33. But the officers told him to "just sit in the chair." Id. The plaintiff says that he told the officers that they could not "deny [him] for medical treatment [*sic*]," but the officers responded that they could "do whatever [they] want just sit down and shut up." Id.

The plaintiff asserts that Madrigal, Wright, Gonzales, Tenhaken and Ozelie failed to intervene to stop Weiland's assault. Id. at 2. He asserts that Ulatowski, Madrigal, Wright, Gonzales, Tenhaken and Ozelie used excessive force. Id. He does not say what relief he seeks for these alleged violations of his rights.

C. Analysis

As the court explained in the previous order, the plaintiff's allegations that Officer Weiland assaulted him without reason arise under the Fourth Amendment. See Dkt. No. 29 at 6 (citing Graham v. Connor, 490 U.S. 386, 394 (1989); and Tennessee v. Garner, 471 U.S. 1, 7–8 (1985)). For the same reasons the court explained in the previous order, the court finds that the amended complaint states a claim of excessive force against Weiland, who the plaintiff reiterates stomped on his hands and neck and caused him injuries. Id. at 6–7.

The amended complaint newly alleges that Officers Madrigal, Wright and Gonzales arrived on the scene, and that the plaintiff yelled for them to help him. But he says that they pinned him down while Weiland continued his assault. Although the plaintiff does not allege that these officers physically assaulted

9
Case 2:24-cv-00517-PP   Filed 03/12/25   Page 9 of 14   Document 41

him, his allegations that they aided Weiland's assault by pinning him down—while the plaintiff was neither threatening the officers nor resisting arrest—are sufficient to state a claim of excessive force against them. See Rodriguez v. City of Berwyn, Case No. 16 C 5106, 2018 WL 5994984, at *13 (N.D. Ill. Nov. 15, 2018) (concluding that a reasonable jury could find officer's use of force excessive when he pinned unarmed, non-resisting suspect to the ground during arrest).

The plaintiff does not state a claim of excessive force against Officers Ulatowski, Tenhaken or Ozelie. The amended complaint does not allege that any of these officers assisted in the assault or physically harmed the plaintiff in any way. The plaintiff says only that Ulatowski arrived at the scene, and that Tenhaken and Ozelie later escorted him to the hospital. The plaintiff does allege that he felt someone grab his legs after Ulatowski arrived at the scene, but he alleges no facts suggesting that it was Ulatowski who grabbed his legs. The court will not allow the plaintiff to proceed on a claim of excessive force against these officers because the amended complaint does not allege that they used any force on him, much less excessive force.

The plaintiff next alleges that Officers Madrigal, Wright, Gonzales, Tenhaken and Ozelie failed to intervene to stop Weiland's assault. These other officers may be held liable as bystanders if the plaintiff shows that they "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." Lewis v. Downey, 581 F.3d 467, 472 (7th Cir.

2009) (citing Chavez v. Ill. State Police, 251 F.3d 612, 652 (7th Cir. 2001), and Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005)).

The plaintiff alleges that Officers Madrigal, Wright and Gonzales not only *participated* in the assault on him but also failed to intervene to stop it. The court already has determined that the amended complaint states enough to allow the plaintiff to proceed on a Fourth Amendment claim against these officers. The same allegations also support a claim that the officers recognized Weiland's assault but failed to intervene. The court will allow the plaintiff to proceed on this alternate ground that if Madrigal, Wright, Gonzales did not contribute to the use of excessive force, they allowed it to occur and failed to intervene and stop it. See Fed. R. Civ. P. 8(d)(2) (noting that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones").

The plaintiff does not include Officer Ulatowski in this claim, but the allegations of the amended complaint suggest that Ulatowski arrived at the scene while Weiland was assaulting the plaintiff and failed to stop it despite having an opportunity to. These allegations are sufficient to state a claim against Ulatowski, and the court will allow the plaintiff to proceed against him.

The amended complaint does not state a claim that Officers Tenhaken and Ozelie failed to intervene. The amended complaint does not allege when these officers arrived at the scene. It says only that at some point they appeared, asked the plaintiff for his name and then took him to the hospital. The plaintiff does not allege that Tenhaken or Ozelie were at the scene and had

a realistic opportunity to intervene while Weiland was assaulting the plaintiff. That they eventually arrived does not mean they were able to stop the assault as it was ongoing. The court will not allow the plaintiff to proceed on this claim against Tenhaken and Ozelie.

The plaintiff does not assert any other claims against Officers Tenhaken and Ozelie. But as the court stated in the previous order, the plaintiff's allegations that these officers denied him medical treatment "could suggest a claim under the Fourteenth Amendment." Dkt. No. 29 at 8 (citing Miranda v. County of Lake, 900 F.3d 335, 352 (7th Cir. 2018) (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)). The plaintiff alleges that the officers took him to the hospital after he could not remember his name, and that Tenhaken repeatedly told the plaintiff not to fall asleep. That suggests that Tenhaken knew that the plaintiff could be concussed and needed to remain awake to prevent further harm. The plaintiff also alleges that at the hospital, he told the officers that he needed to see a doctor for his head, but that Tenhaken and Ozelie told him to be quiet and refused to call for medical help. Although these allegations are somewhat vague, the court finds that at the screening stage, they are sufficient to state a claim that Tenhaken and Ozelie denied the plaintiff proper medical attention at the hospital. The court will allow the plaintiff to proceed on this claim.

To summarize, the plaintiff may proceed on the following claims: 1) a Fourth Amendment claim of excessive force against Officers Weiland, Madrigal, Wright and Gonzales; 2) a Fourth Amendment failure-to-intervene claim

against Officer Ulatowski; and 3) a Fourteenth Amendment claim for denial of medical treatment against Officers Tenhaken and Ozelie.

As a final note, on January 27, 2025, the court received a letter from the plaintiff in which he says that he has been unable to obtain an attorney on his own but that he is "getting some help" from "this guy" who has the plaintiff's tablet and is "going to send in a[n] Amended Complaint." Dkt. No. 38. This letter is dated January 22, 2024 (although the court suspects the plaintiff meant to write 2025), which is one day before the court received the proposed amended complaint. It is possible that the amended complaint the court received is the one referenced in this letter. If not, the court cautions the plaintiff that *he* must sign and file all his own papers. The court will not accept filings from other persons on the plaintiff's behalf, unless they are from an attorney representing the plaintiff.

### III. Conclusion

The court **DENIES** the plaintiff's motion for reconsideration and to subpoena body camera footage. Dkt. No. 31.

The court **ORDERS** that the amended complaint at Dkt. No. 37 is the operative complaint.

The court **DIRECTS** the Clerk of Court to **REINSTATE** defendants Allan Tenhaken and Thomas Ozelie and to **ADD** defendants Nicholas Ulatowski, Luis Madrigal, Benjamin Wright, Daniel Gonzales to the docket.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint (Dkt. No. 37) and this order on Officers Michael Weiland,

Nicholas Ulatowski, Luis Madrigal, Benjamin Wright, Daniel Gonzales, Allan Tenhaken and Thomas Ozelie of the Milwaukee Police Department under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendants to file a responsive pleading to the amended complaint.

Dated in Milwaukee, Wisconsin this 12th day of March, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**