STEVEN A. BAILEY,

                Plaintiff,

v.                                        Case No. 24-cv-517-pp

MICHAEL WEILAND, *et al.*,

                Defendants.

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 58) AND DENYING MOTION TO STAY PROCEEDINGS (DKT. NO 66)**

      Plaintiff Steven A. Bailey is proceeding on Fourth and Fourteenth Amendment claims against officers from the Milwaukee Police Department. On April 9, 2025, the court received the plaintiff's motion to appoint counsel. Dkt. No. 58. The plaintiff says that he has "gotten in contact" with two law firms, but that only one responded to him and told him it would "not be sending mail out to [him]." Id. The plaintiff says that the court "can get in contact with them and they will confirm that [he has] gotten . . . in contact with the law firm's [*sic*]." Id. The plaintiff lists two law firms in Wisconsin and Illinois but does not identify the firm with which he has been in contact. Id. He also does not explain why the court should appoint him an attorney. Id.

      On May 5, 2025, the court received a declaration from an incarcerated person named Kendrick Sellers, who says he is the library clerk at Columbia Correctional Institution (which is also where the plaintiff is incarcerated). Dkt.

No. 60 at ¶1. Sellers says that the plaintiff told him that the plaintiff has dyslexia and has difficulty reading and writing. Id. at ¶3. He says that he and a previous law clerk were assisting the plaintiff with his case, but that the previous law clerk left and Sellers also is leaving the institution. Id. at ¶4. Sellers opines that without an attorney, the plaintiff will not be able to litigate this case "with full vigor" and "will not succeed at gathering discovery, or the summary judgment phase in this case." Id. at ¶¶2, 5.

The court also received two letters from the plaintiff. These letters are full of misspellings and other errors that make them difficult to follow. The first letter is dated May 22, 2025. Dkt. No. 64. As far as the court can tell, the plaintiff confirms that he was having someone assist him with his case but says that he "can't [do] the papereworke [sic] without a laworer [sic]." Id. He says that he cannot keep paper and again asks the court to send him a lawyer because he was able to prepare his previous filings only with assistance from another person. Id. He states that this "man at the [institution] say he is not going to [be] going [sic] to help [him] nomor [sic]." Id. The plaintiff says that he does not have a tablet and "can[']t do nothing on [his] one [sic]." Id.

In the second letter, dated June 3, 2025, the plaintiff reiterates that he does not have anyone to help him with his case. Dkt. No. 65. He asks why the court has not responded to his motion or previous letters asking for an attorney. Id. He says that he does not know "how to resp[o]nd to the police come plant [sic]" and is concerned that without someone "to help [him]" he will "have to just stop" because he "can[']t do this on [his] onesefe [sic]." Id.

2

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate

those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

  The plaintiff arguably has satisfied the first Pruitt inquiry. He lists two attorneys or law firms that he says he contacted about representing him, and he says that he contacted three others (that he did not list). He says that one of these firms responded and told him that they will not send him more mail. He suggests that the court could contact this law firm to confirm that the plaintiff has contacted it and others about taking his case. The plaintiff does not say which of the firms listed is the one that responded, but the court will not contact any law firms on the plaintiff's behalf. The court will accept as true the

4

plaintiff's statements that he contacted five attorneys or firms and asked them to take his case, but that none of them agreed. That is sufficient to satisfy the first Pruitt inquiry.

But the plaintiff has not satisfied the second Pruitt inquiry. In his motion and his letters, the plaintiff says that he needs the court to appoint him an attorney because he previously had assistance from other incarcerated persons, but those persons no are longer helping him and he cannot litigate this case on his own. The declaration from Kendrick Sellers appears to confirm that Sellers and another law clerk were helping the plaintiff, but they have left or soon are leaving the institution and no longer will be able to help him with his case. The court previously had advised the plaintiff "that *he* must sign and file all his own papers" and warned him that the court would "not accept filings from other persons on the plaintiff's behalf, unless they are from an attorney representing the plaintiff." Dkt. No. 41 at 13. But the court will consider Sellers' declaration because it is a declaration, not a pleading or motion that the plaintiff could have filed himself. Sellers says that the plaintiff told him that the plaintiff has dyslexia. The plaintiff told the court about his dyslexia in a previous motion he filed. Dkt. No. 47.

Although the court understands that the plaintiff's dyslexia likely makes it more difficult for him to litigate this case on his own, that alone is not sufficient reason to recruit him an attorney at this stage of the case. The plaintiff's concerns about litigating this case are unfortunately common for self-represented litigants, especially for persons who are incarcerated. The

court is aware of the difficulty incarcerated persons face litigating cases on their own. But as the court said above, the Constitution does not entitle the plaintiff to an attorney to represent him in this civil case, and there are not enough attorneys willing and able to represent indigent plaintiffs for free.

The court also understands the plaintiff's concern that he will not be able to litigate this case now that the people who were assisting him have left the institution, but the plaintiff has not shown that he is one of those incarcerated persons most in need of legal assistance to present his claims adequately. Although the plaintiff's letters demonstrate his difficulty with writing and spelling, this case is relatively straightforward. The plaintiff alleges that several Milwaukee Police Officers used excessive force while arresting him, failed to intervene to stop the use of force and/or failed to provide him medical assistance after his arrest. The plaintiff alleges that the officers intentionally removed their body worn cameras to avoid recording the incident, so this case likely will turn on statements from the parties involved. Although it is not certain, the facts of this case do not suggest a need for expert testimony or months of complicated medical records.

This case also is at an early stage, and the parties have only just begun exchanging information through discovery. The parties' deadline to compete discovery is many months away—October 27, 2025. The court advises the plaintiff to read the scheduling order (Dkt. No. 63) for more information about complying with the defendants' discovery requests and asking the defendants for information that he believes he needs to prove his claims. If he believes he needs

additional time to respond to discovery requests from the defendants, the plaintiff should ask defense counsel for additional time to respond. Once the parties have finished exchanging information, they may file motions for summary judgment, which currently are due no later than November 26, 2025. The plaintiff will need to present sufficient evidence to defeat a potential motion for summary judgment, but the court will give him additional information about presenting his evidence if the case reaches that stage.

As this case progresses, the court will be flexible in giving the plaintiff reasonable additional time to litigate this lawsuit. The legal and factual issues may become too complex for the plaintiff, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. If that occurs, and if giving the plaintiff additional time does not help, it may be appropriate to recruit counsel to represent the plaintiff. But at this early stage, the court cannot conclude that the plaintiff requires the assistance of counsel to present his case adequately. The court will deny the plaintiff's motion to appoint counsel without prejudice. That means that he may renew his request later if he still believes he needs counsel's assistance to litigate his case.

The plaintiff also asked the court to stay the proceedings in this case pending a decision on his motion to appoint counsel. Dkt. No. 66. This document is typed, not handwritten like the plaintiff's letters about his need for an attorney. That suggests that another incarcerated person still may be helping the plaintiff litigate this case, at least for now. Because the court in this

order is deciding and denying the plaintiff's motion to appoint counsel, the court also will deny his motion to stay the proceedings.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 58.

The court **DENIES** the plaintiff's motion to stay the proceedings. Dkt. No. 66.

Dated in Milwaukee, Wisconsin this 8th day of July, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**